[Tagged Opinion]



**ORDERED in the Southern District of Florida on September 03, 2010.**

_____
                **Erik P. Kimball, Judge**
            **United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| **In re:** | **CASE NO.: 10-13436-EPK** |
| **JAY STEVEN LEVIN,** | **CHAPTER 7** |
|     Debtor. | |
| _____/ | |
| **GREG DREWES and** | **ADV. NO.: 10-03003-EPK** |
| **LUCIANA DREWES,** | |
|     Plaintiffs, | |
|  v. | |
| **JAY STEVEN LEVIN,** | |
|     Defendant. | |
| _____/ | |

**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DE 11]**

      Greg and Luciana Drewes (the "Plaintiffs") move for summary judgment on the sole

count of their complaint requesting determination that a $750,000 debt owed to them by Jay

Steven Levin (the "Debtor") is not dischargeable under section 523(a)(6) of 11 U.S.C. §§ 101 *et*

*seq*. (the "Bankruptcy Code").  The Debtor is obligated to the Plaintiffs under a Florida state court judgment holding the Debtor liable to the Plaintiffs for the shooting death of the Plaintiffs' teenage son, Mark Drewes ("Mark Drewes" or the "Deceased").

The court considered the *Plaintiffs' Motion for Summary Judgment* [DE 11] (the "Motion"), the *Complaint to Determine Dischargeability of Debt* [DE 1] (the "Complaint"), the *Answer to Adversarial Complaint* [DE 13] (the "Answer"), the *Joint Stipulation of Facts Relating to Plaintiffs' Motion for Summary Judgment* [DE 18] (the "Joint Stipulation"), the *Memorandum in Response and Opposition to Plaintiffs' Motion for Summary Judgment* [DE 19] (the "Response"), the *Affidavit in Opposition to Motion for Summary Judgment* (the "Affidavit") filed with the Response [Ex. A to DE 19]; the *Plaintiffs' Reply to Defendant's Response and Opposition to Plaintiffs' Motion for Summary Judgment* [DE 20] (the "Reply"), and the discovery and disclosure materials filed therewith.

In light of the Florida state court judgment, which has preclusive effect with regard to issues presented here, the Debtor's own statements in the Affidavit, and the lack of any admissible contradictory evidence offered by the Debtor, there is no genuine issue of material fact in this adversary proceeding.  The debt owed by the Debtor to the Plaintiffs arises from a willful and malicious injury within the meaning of section 523(a)(6) of the Bankruptcy Code.  The court will enter a separate judgment consistent with this order providing, *inter alia*, that the Debtor's obligations under the state court judgment will not be discharged in the Debtor's chapter 7 case.

**I.     Background**

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on February 12, 2010.

On May 14, 2010, the Plaintiffs filed their complaint initiating this adversary proceeding. Plaintiffs' complaint comprises a single count requesting a determination that a Florida state court judgment against the Debtor, in the aggregate amount of $750,000, is not dischargeable under section 523(a)(6) of the Bankruptcy Code.[1]

On June 7, 2010, the Plaintiffs filed the instant Motion. The Plaintiffs argue that the Debtor is collaterally estopped from re-litigating the issues decided in the Florida state court action. The Plaintiffs argue that the issues litigated in the state court are dispositive here, that there are no genuine issues of material fact in this adversary proceeding, and the Plaintiffs are entitled to judgment as a matter of law.

## II. Florida State Court Action

On October 26, 2004, the Plaintiffs, individually and as co-personal representatives of the estate of Mark Drewes, filed an amended complaint against the Debtor commencing a civil matter styled *Drewes v. Levin*, Case No. 2003 CA 01-2339 XXNAG (the "State Action"), in the Circuit Court of the Fifteenth Judicial Circuit In and For Palm Beach County, Florida (the "State Court"). In their amended complaint, the Plaintiffs alleged that the Debtor "deliberately, wantonly, recklessly, and with a specific intent to harm, shot MARK ANDREW DREWES, inflicting wounds that ultimately caused his death." More specifically, in the amended complaint the Plaintiffs alleged as follows:

---

[1] Section 523(a)(6) provides:

§ 523 Exceptions to Discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
. . . .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;
. . . .

3

> On or about 12:30 a.m. on October 25, 2003, while playing a harmless teenage game of "ding-dong-ditch" the deceased, MARK ANDREW DREWES, entered upon the entry walkway of the property located at 6115 Woodbury Road in Boca Raton, Florida.
>
> At that same time and place, the Defendant, JAY STEVEN LEVIN, upon hearing a noise in the vicinity of his front door came to the door armed with a .40 caliber handgun loaded with a type of bullets that contain many small metal pellets that explode outward on contact causing maximum damage to a wounded victim.
>
> Upon opening the front door and looking onto the lighted porch, the Defendant, JAY STEVEN LEVIN, without giving any verbal warning and without making any inquiry or investigation, fired one shot into the back of the fleeing teenager, MARK ANDREW DREWES, killing him.

In addition to the loss of the services of their son, medical bills, funeral bills and related damages, the Plaintiffs alleged that the Debtor's actions caused past and continuing "severe mental distress, severe mental pain, anguish, and emotional distress" to the Plaintiffs as the parents of Mark Drewes. The Plaintiffs also requested punitive damages in the State Action.

The Debtor answered the Plaintiffs' amended complaint in the State Action, asserting six affirmative defenses: (1) justifiable use of force, in the defense of himself, and the defense of others; (2) defense of himself and others, and constituted lawful force pursuant to Fla. Stat. § 776.012; (3) justifiable use of force necessary to prevent imminent commission of a forcible felony; (4) the damages were caused by the negligence and/or intentional acts of Mark Drewes; (5) the receipt of benefits from collateral sources entitle the Debtor to set off; and (6) immunity from liability for civil injury to, or death of, Mark Drewes because Mark Drewes was a "discovered trespasser."

The State Action was tried before a jury. The State Court asked the jury to determine whether the Debtor committed a battery against Mark Drewes. The State Court instructed the jury that "[a] battery is an intentional infliction of harmful or offensive contact on the person of another." The State Court further instructed the jury as follows:

4

In order to find that Defendant, JAY LEVIN, has committed a battery, you must find that Plaintiffs [] have shown by the greater weight of the evidence that:

1) Defendant, JAY LEVIN, intended to contact Mark Drewes' person;

2) Defendant, JAY LEVIN, actually contacted Mark Drewes;

3) The contact was harmful or offensive; and

4) The contact directly or indirectly caused injury to Mark Drewes.

If the greater weight of the evidence does not support the claim of Plaintiffs [] then your verdict should be for the Defendant, JAY LEVIN.

However, if the greater weight of the evidence does support the claim of Plaintiffs [] then you should consider the defense raised by the Defendant, JAY LEVIN.

You may find that the Defendant, JAY LEVIN, was justified in the use of deadly force if he reasonably believed that Mark Drewes was about to inflict great bodily harm or death on Defendant.

In order to find that Defendant, JAY LEVIN's action was justifiable self-defense, you must find that:

1) A reasonably prudent person would believe that he or another person would be injured or killed if force were not used to repel an attack.

2) Defendant acted reasonably under the facts and circumstances as they appeared at the time.

You may consider the fact that the circumstances may not have afforded Defendant, JAY LEVIN, enough time to reflect on alternative courses of action.

The force that one may use in withstanding a battery is such force as reasonably appears necessary, in view of all the circumstances, to protect oneself from bodily injury.

Therefore, unless you find that Defendant, JAY LEVIN, has shown, by the greater weight of the evidence, that he, even though acting in self-defense, did not use excessive or unnecessary force in responding to a threatened imminent battery, then you must find the Defendant, JAY LEVIN, liable for a battery.

If the greater weight of the evidence does not support the defense of Defendant, JAY LEVIN, and the greater weight of the evidence does support the

5

claim of Plaintiffs [] then your verdict should be for the Plaintiffs [] in the total amount of their damages.

* * *

The trial of the punitive damages issue is divided into two stages. In this first stage, you will decide whether the conduct of Defendant, JAY LEVIN, is such that punitive damages are warranted. If you decide that punitive damages are warranted, we will proceed to the second stage during which the parties may present additional evidence and argument on the issue of punitive damages. I will then give additional instructions, after which you will decide whether in your discretion punitive damages will be assessed and, if so, the amount.

Punitive damages are warranted if you find by clear and convincing evidence that JAY LEVIN was personally guilty of intentional misconduct. "Intentional misconduct" means that JAY LEVIN had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Mark Drewes would result, and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

"Clear and convincing evidence" differs from the "greater weight of the evidence" in that it is more compelling and persuasive. "Greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case. In contrast, "clear and convincing evidence" is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.

On March 1, 2007, the jury returned a verdict in favor of the Plaintiffs, finding that the Debtor committed a battery against Mark Drewes, finding that the force used by the Debtor was not a justifiable use of deadly force in self defense, and awarding $750,000 to the Plaintiffs for mental pain and suffering as a result of the injury to and death of Mark Drewes. The jury did not find that punitive damages were warranted.

On March 20, 2007, the State Court entered a final judgment incorporating the verdict, in the aggregate amount of $750,000 plus interest at the statutory rate for 2007, 11% per annum.

On April 6, 2007, the Plaintiffs issued a Partial Satisfaction of Judgment, indicating they received payment of $102,260.00. There remains owing by the Debtor to the Plaintiffs $647,740.00 plus interest under Florida law.

6

### III. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate if the court determines that the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. *Celotex,* 477 U.S. at 323. "[O]nce the moving party has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, Federal Rule of Civil Procedure 56(e) shifts to the non-moving party the burden of presenting specific facts showing that such contradiction is possible." *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* (*citing Anderson*, 477 U.S. at 252).

### IV. Collateral Estoppel Standard

Collateral estoppel principles apply in discharge exception proceedings under Bankruptcy Code section 523(a). *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991). "A bankruptcy court may rely on collateral estoppel to reach conclusions about certain facts, foreclose relitigation of

7

those facts, and then consider those facts as 'evidence of nondischargeability.'" *Thomas v. Loveless (In re Thomas)*, 288 Fed. Appx. 547, 548 (11th Cir. 2008) (citation omitted). "Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case." *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 675 (11th Cir. 1993).

Because the judgment at issue was rendered by a Florida state court, this Court must apply the collateral estoppel law of Florida. *In re St. Laurent*, 991 F.2d at 676. Under Florida law, for the judgment to have preclusive effect, four elements must be satisfied:

> (1) the issue at stake must be identical to the one decided in the prior litigation;
>
> (2) the issue must have been actually litigated in the prior proceeding;
>
> (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and
>
> (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.

*Id.*

## V.     "Willful and Malicious Injury" under Section 523(a)(6)

An injury alleged as the basis for a non-dischargeable claim under section 523(a)(6) must be both willful and malicious. In *Kawaauhau v. Geiger*, the United States Supreme Court addressed the meaning of the term "willful" in subsection (a)(6). 523 U.S. 57 (1998). The *Kawaauhau* court considered whether a claim for medical malpractice would be excepted from discharge. The Supreme Court determined that the reckless or negligent conduct alleged in the case before it was not sufficient to meet the requirements of section 523(a)(6). The Supreme

Court then addressed what conduct may in fact result in a non-dischargeable debt under that provision, stating:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964) (emphasis added).

*Id*. at 61.

While the Supreme Court unambiguously excluded injury resulting from reckless or negligent conduct from the ambit of section 523(a)(6), the *Kawaauhau* decision does not address the proof required to show intent under the Court's definition of the term "willful." The decision provides no explicit guidance as to whether a plaintiff must show that the defendant subjectively intended the resulting injury, or whether a plaintiff may prove the requisite intent by showing that the defendant undertook an intentional act that was substantially certain to result in the plaintiff's injury. However, in its brief exposition on the concept of intent, the Supreme Court distinguished "intentional torts" from torts relying on reckless or negligent acts, and cited the Restatement (Second) of Torts for its definition of intent. By drawing a parallel between the concept of intent in tort at common law and the requirement of willfulness in section 523(a)(6), the Supreme Court shed light on what must be proven to discharge a debt under this provision.

To prove an intentional tort under common law it is, of course, sufficient to show that the defendant subjectively intended the harm that resulted.

> Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his

9

> act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness . . . As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence . . . All three have their important place in the law of torts, but the liability attached to them will differ.

Restatement (Second) of Torts § 8A, cmt. b (1965). Where a person undertakes an intentional act that injures another or property of another, but lacks a specific intent to cause the resulting injury, that person's potential liability in tort falls on a continuum based on the probability that the person's act will result in such injury. When there is a substantial certainty that injury will result from a given intentional act, one who so acts may be held liable for an intentional tort.

By referencing this definition of "intent," the Supreme Court acknowledged that it is not necessary for a plaintiff seeking relief under section 523(a)(6) to prove that the defendant intended to cause the injury itself. As at common law, the plaintiff may show that the defendant acted intentionally and the act in question was certain or substantially certain to result in the injury.

Consistent with this analysis, the Eleventh Circuit Court of Appeals held: "Because Congress reenacted section 523(a)(6) in the context of the common law, we conclude that a debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Hope v. Walker (In re Walker),* 48 F.3d 1161, 1165 (11th Cir. 1995) (*citing* Restatement (Second) of Torts § 8A). Although the Eleventh Circuit issued its decision in *Walker* prior to the Supreme Court's ruling in *Kawaauhau*, the Eleventh Circuit recently confirmed its analysis in *Walker*. *In re Thomas*, 288 Fed. Appx. at 549 (*citing In re Walker,* 48 F.3d at 1165).

Numerous decisions support the conclusion that where injury is a substantial certainty a debtor's intentional act may result in a non-dischargeable obligation under section 523(a)(6). *E.g., Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455 (6th Cir. 1999); *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998); *Baldwin v. Kilpatrick (In re Baldwin),* 245 B.R. 131 (B.A.P. 9th Cir. 2000); *Via Christi Reg'l Med. Ctr. v. Budig (In re Budig),* 240 B.R. 397, 401 (D. Kan. 1999); *Fid. Fin. Servs. v. Cox (In re Cox),* 243 B.R. 713 (Bankr. N.D. Ill. 2000); *Avco Fin. Servs. v. Kidd (In re Kidd),* 219 B.R. 278, 285 (Bankr. D. Mont. 1998).

There is some disagreement among the courts as to whether the substantial certainty standard is a subjective standard, requiring the plaintiff to prove that the defendant knew the act was substantially certain to cause injury, or an objective standard, requiring the plaintiff to show that the defendant's act was substantially certain to cause injury without regard to the defendant's actual belief or knowledge in this regard. *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, No. 99-3339, 2000 U.S. App. LEXIS 22754 (10th Cir. Sept. 8, 2000) (examining cases). The Fifth Circuit has consistently held that substantial certainty requires an objective analysis by the court; the defendant's personal belief or knowledge on substantial certainty need not be proven. *See Guerra & Moore Ltd. v. Cantu (In re Cantu)*, No. 09-41084, 2010 U.S. App. LEXIS 16582 (5th Cir. Aug. 4, 2010); *Red v. Baum (In re Red)*, 96 Fed. Appx. 229 (5th Cir. 2004); *In re Miller*, 156 F.3d at 603 ("either objective substantial certainty or subjective motive meets the Supreme Court's definition of "willful ... injury" in § 523(a)(6)"). The Tenth Circuit has held that the term "willful" in subsection (a)(6) requires the court to determine whether the defendant knew or believed the act was substantially certain to result in injury. *In re Englehart*, 2000 U.S. App. LEXIS 22754.

11

Where a court requires proof of the defendant's knowledge with regard to substantial certainty the defendant is unlikely to admit that he or she acted with actual knowledge an injury would result. "In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Carrillo v. Su (In Re Su)*, 290 F.3d 1140, 1146 n.6 (9th Cir. 2002). "The Debtor is charged with the knowledge of the natural consequences of his actions." *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010) (*citing Cablevision Sys. Corp. v. Cohen (In re Cohen)*, 121 B.R. 267, 271 (Bankr. E.D.N.Y. 1990)).

Most of the decisions addressing the nature of the substantial certainty analysis involve financial harm. *See, e.g.*, *In re Englehart*, 2000 U.S. App. LEXIS 22754; *Greentree Fin. Servs. v. Howard (In re Howard)*, 261 B.R. 513, 521 (Bankr. M.D. Fla. 2001). In these cases, the plaintiff typically alleges that the defendant misapplied or withheld funds or other property, interfered with contractual relations, or the like. In the financial tort cases, because of the somewhat attenuated relationship between the defendant's act and the resulting harm, a purely objective substantial certainty analysis would bring the court dangerously close to the recklessness standard. In such cases, using a subjective standard for substantial certainty avoids this risk.

Courts have struggled far less with physical intentional torts like the shooting at issue in this case. *See, e.g.*, *Pettey v. Belanger*, 232 B.R. 543 (D. Mass. 1999); *Kleman v. Taylor (In re Taylor)*, 322 B.R. 306, 309 (Bankr. N.D. Ohio 2004); *Montgomery v. Herring (In re Herring)*, 193 B.R. 344, 352 (Bankr. N.D. Ala. 1995). In cases such as the one here, the circumstantial evidence of the defendant's actual knowledge or belief tends to merge with the evidence

supporting a finding of substantial certainty on an objective basis.  To put it plainly, the willfulness of the act under subsection (a)(6) is often fairly obvious given the circumstances.

Section 523(a)(6) also requires that the debt arise from a "malicious" injury.  "Malice can be implied when a debtor commits an act that is 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Thomas*, 288 Fed. Appx. at 549 (*quoting In re Walker*, 48 F.3d at 1164).

## VI.  Analysis

In the State Action, the jury returned a verdict finding that the Debtor committed a battery on Mark Drewes.  In light of the jury instructions, by returning its verdict the jury found that the Debtor intended to contact Mark Drewes, he actually contacted Mark Drewes, the contact was harmful or offensive, the contact caused injury to Mark Drewes, and the contact was not a justifiable use of deadly force.  Each of these issues was actually litigated in the State Action and is a critical and necessary part of the judgment of the State Court, and thus may have preclusive effect here.  *In re St. Laurent*, 991 F.2d at 676.

For the State Court judgment to have preclusive effect, the standard of proof in the State Action must be at least as stringent as that employed in this adversary proceeding.  *In re St. Laurent*, 991 F.2d at 677.  The standard of proof in all dischargeability proceedings under section 523(a) is the "ordinary preponderance-of-the-evidence standard."  *Grogan v. Garner*, 498 U.S. 279, 291 (1991).  For claims arising in battery and the Debtor's justification defense, the State Court applied the "greater weight of the evidence" standard.  The Florida Supreme Court uses the phrase "greater weight of the evidence" interchangeably with "preponderance of the evidence."  *Tobin v. Labidou (In re Labidou),* 2009 Bankr. LEXIS 2800, *17 (Bankr. S.D. Fla. Sept. 8, 2009) (*citing Wieczoreck v. H & H Builders, Inc.*, 475 So. 2d 227, 228 (Fla. 1985)).

13

Because the evidentiary burden applicable to the issues of battery and the Debtor's defense in the State Action was the same as that required in this adversary proceeding, this element of the issue preclusion test under Florida law is met in the present case. The Debtor concedes as much.

For collateral estoppel purposes, the court must determine which issues at stake here are identical to issues decided in the State Action. In order to prove their case here, the Plaintiffs must show that (a) the Debtor discharged his handgun with the purpose of injuring Mark Drewes or the Debtor intentionally discharged his handgun and such intentional act was substantially certain to result in injury to Mark Drewes, in either case making such act "willful" for purposes of section 523(a)(6), (b) the Debtor's act caused injury to Mark Drewes, (c) the Debtor's act was wrongful and without just cause or excessive, and thus "malicious" within the meaning of section 523(a)(6), and (d) the Plaintiffs' debt arose from such injury.

The State Court found that the Debtor intended to contact Mark Drewes and the Debtor actually contacted Mark Drewes. It is undisputed that the contact in question consists of a bullet fired from the Debtor's gun entering the back of Mark Drewes. In the Stipulation of Facts, the Debtor agrees that he "discharged his weapon resulting in a fatal gunshot wound in the back of the Deceased." Nothing in the record suggests that the Debtor contacted Mark Drewes in any other manner on the night in question. The State Court concluded that the Debtor intended to contact Mark Drewes. To find that the Debtor intended to contact Mark Drewes, with a bullet fired from his handgun, means that the Debtor intended to shoot Mark Drewes.

In order to satisfy the "willful" standard under section 523(a)(6), as a threshold matter the Plaintiffs must show that the Debtor intentionally shot his gun. The State Court went a step further, finding that the Debtor discharged his gun with the intent of shooting Mark Drewes. That finding has collateral estoppel effect here.

14

The State Court determined that the Debtor's shooting injured Mark Drewes resulting in his death, and the State Court awarded damages to the Plaintiffs as a result of this injury. These issues are identical to issues the Plaintiff must prove here. The Debtor is precluded from challenging the allegation that he injured Mark Drewes[2] or that such injury resulted in the Plaintiffs' debt.[3]

The State Court judgment affords the Plaintiffs nearly complete relief in this action. As a last step to proving that the Debtor's act was "willful" under prevailing law, the Plaintiffs must show either that the Debtor shot Mark Drewes with the purpose of injuring him, or that the Debtor intentionally discharged his handgun and that this act was substantially certain to injure Mark Drewes. The State Court determined that the Debtor intentionally shot Mark Drewes. The State Court did not find that the Debtor's intentional shooting was substantially certain to injure Mark Drewes.

As discussed more fully above, there is a split of authority on the proof required to show a substantial certainty that injury would result from a certain intentional act. Under the

---

[2] The Debtor admits that he caused Mark Drewes' death.

[3] The Debtor did not challenge the Plaintiffs' standing to bring an action under subsection (a)(6). The Plaintiffs bring this action seeking a finding of non-dischargeability for the debt owed to them personally for their pain and suffering as a result of the injury to their son. Section 523(a)(6) excepts from discharge a debt for willful and malicious injury by the debtor to another entity or to the property of another entity. The term "entity" includes a "person." 11 U.S.C. § 101(15). The term "person" includes an "individual." 11 U.S.C. § 101(41). In this case, the individual the Debtor injured was the Plaintiffs' son. There is nothing in section 523(a) requiring that the injured individual be the person whose debt is excepted from discharge under subsection (a)(6). Section 523(a)(6) requires only that there be a debt owing by the Debtor and that such debt be "for willful and malicious injury by the debtor to another entity." Here, the Debtor is obligated to the Plaintiffs under the State Court judgment. The debt arises from the willful and malicious injury by the Debtor to Mark Drewes. The Plaintiffs are proper claimants under this provision. One court considering this issue determined that a plaintiff may recover only if injury to the plaintiff itself was substantially certain to result from the debtor's action. In *Jendusa-Nicolai v. Larsen (In re Larsen)*, 422 B.R. 913 (Bankr. E.D. Wis. 2010), the debtor had attacked his former wife, brutally injuring her. The claims before the court included claims held by the victim, her new husband, and the debtor's own children who remained in custody of the victim. Under the circumstances of that case, the court determined that "injury to the [husband and children] was foreseeable and certain to occur as a direct result of the debtor's malicious act. That is enough to except the damages from discharge under 11 U.S.C. § 523(a)(6)." *Id.* at 923. In this case, although the Debtor's gun was not shot at the Plaintiffs themselves, their pain and suffering was substantially certain to result from the Debtor's willful and malicious act against their teenage son. In any case, the court does not believe this analysis is necessary or required in light of the plain language of section 523(a)(6).

15

subjective test, the Plaintiffs must show that the Debtor knew that the shooting was substantially certain to injure Mark Drewes.  In making this determination, the court may consider circumstantial evidence of the Debtor's knowledge or belief.  Under the objective test, the Plaintiffs must show that the shooting was substantially certain to injure Mark Drewes without regard to whether the Debtor knew this was the case.

Here, it does not matter whether the court adopts the objective or the subjective substantial certainty test.  The State Court judgment combined with the Debtor's own statements satisfy both standards.

In his Affidavit, the Debtor states that after hearing noises coming from his front door he went to retrieve his gun.  He proceeded to the front door and the noises had stopped.  The Debtor then opened the door slowly and, not seeing anything, opened the door fully.  The Debtor states that Mark Drewes emerged from behind the front door.  The Debtor states that "with the (sic) only to keep this figure off me I raised my gun from my side and shot . . . in front of me.  This figure was within three feet of my reach and turned out to be Mark Drewes."

In the Affidavit, the Debtor states he shot "aimlessly."  The State Court found that the Debtor intended to shoot Mark Drewes and such finding has collateral estoppel effect here.  Because this allegation in the Affidavit is inconsistent with the State Court finding, it is given no weight here.

Likewise, in his Affidavit the Debtor alleges that he acted out of fear for his personal safety and in self-defense.  These allegations are directly contrary to the State Court finding that the shooting was an unjustified use of deadly force, a finding that has preclusive effect here.  Those portions of the Debtor's affidavit that suggest he was acting in self defense are disregarded.

Taking into account the remainder of the Debtor's Affidavit, by his own admission the Debtor intentionally discharged a handgun within three feet of Mark Drewes with the aim of getting Mark Drewes away from him. When one shoots a handgun in such close proximity to another person, under the physical circumstances described by the Debtor in his Affidavit, it is almost certain that the other person will be injured. On an objective basis, there is no doubt that Mark Drewes was certain or substantially certain to be injured or killed.

Similarly, the State Court judgment and the circumstantial evidence provided by the Debtor's own statements in his Affidavit lead the court to the inescapable conclusion that the Debtor knew the shooting was substantially certain to injure or kill Mark Drewes. The Debtor is an adult. He owned a handgun. He took the time to retrieve the handgun and bring it to his front door. He opened the door and saw Mark Drewes. Mark Drewes was within three feet of the Debtor and the Debtor believed Mark Drewes was getting closer. The Debtor shot his handgun to repel Mark Drewes. The State Court concluded that the Debtor intended to shoot Mark Drewes. It is inconceivable that the Debtor did not realize Mark Drewes would be injured or killed. [4] The Debtor cannot deny the natural consequences of his act. The Debtor's shooting of Mark Drewes was "willful" within the meaning of section 523(a)(6).

Under section 523(a)(6), the Plaintiffs must show that the injury was "malicious." "Malice can be implied when a debtor commits an act that is 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Thomas*, 288 Fed. Appx. at 549 (*quoting In re Walker*, 48 F.3d at 1164). The State Court found that the force used by the Debtor against Mark Drewes was not a justifiable use of deadly force in self-defense. Where there is "an intentional, unjustified shooting, the element of maliciousness is unavoidably

---

[4] It is possible a defendant may lack the capacity to understand his act and could not know or believe that his act was substantially certain to injure another. No such allegation is made here.

found in the jury's verdict." *Smith v. Pitner (In re Pitner)*, 6 B.R. 731, 733 (E.D. Tenn. 1980), *aff'd*, 696 F.2d 447 (6th Cir. 1982). "The deliberate shooting of another human being, not done in self-defense, is a malicious act in every sense of the word. One does not fire a pistol at another person without intending to kill or seriously injure him. An unjustified intent to kill or seriously injure someone reflects ill-will." *Id*. By finding that the shooting was not justified, the State Court found that it was wrongful and without just cause, and thus "malicious" within the meaning of section 523(a)(6).

The Debtor argues that because the State Court did not award the Plaintiffs punitive damages, the Plaintiffs may not rely on the State Court judgment here. On the claim for punitive damages, the State Court instructed the jury to determine whether the Debtor "had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Mark Drewes would result, and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." The jury instruction on punitive damages required consideration of standards similar to those required to prove a willful and malicious injury under subsection (a)(6). The Debtor argues that the Plaintiffs' failure to obtain punitive damages in the State Action amounts to a finding that the Debtor did not act with the requisite willfulness or maliciousness. This argument lacks merit for several reasons.

First, the standard of proof required to award punitive damages in the State Action was clear and convincing evidence. All issues in this adversary proceeding are to be tried under the preponderance of the evidence standard. Thus, the Plaintiffs' failure to meet the higher evidentiary standard for punitive damages in the State Action does not preclude a finding here that the Debtor caused a willful and malicious injury.

Second, the "intentional misconduct" necessary to support an award of punitive damages in the State Action includes an element not applicable to an action under section 523(a)(6). The jury was instructed to determine whether the Debtor had "actual knowledge of the wrongfulness of the conduct." This is a required element of proof under the punitive damages instruction. To satisfy subsection (a)(6), the Plaintiffs need not prove the Debtor knew his conduct was wrongful. The Plaintiffs must show that the Debtor's act itself was wrongful and without just cause, but the Debtor's knowledge on this issue is not relevant. The State Court could have declined to award punitive damages as a result of the Plaintiffs failure to prove this element of the punitive damages claim, an element having no impact here. Because it is unclear why the State Court declined to award punitive damages, the failure to obtain that relief in the State Action does not preclude any aspect of the Plaintiffs' claim in this adversary proceeding.

Third, punitive damages are discretionary under Florida law. *See Bould v. Touchette*, 349 So.2d 1181 (Fla. 1977); *Town of Medley v. Scott*, 285 So.2d 663, 664 (Fla. 3d DCA 1973). Because punitive damages are discretionary, the State Court's failure to sanction punitive damages cannot be taken as a finding on any aspect of the claim for punitive damages. The failure of the State Court to award punitive damages is not dispositive with regard to the application of collateral estoppel in this case.

## VII.   Conclusion

The State Court judgment has collateral estoppel effect in this adversary proceeding on the following issues: (a) the Debtor intentionally shot Mark Drewes, (b) the shooting caused injury to and resulted in the death of Mark Drewes, (c) the shooting was an unjustified use of deadly force, and (d) the Plaintiffs' debt arose from such injury. The State Court judgment and the Debtor's own statements describing the circumstances of the shooting leave no doubt that the

shooting was substantially certain to injure or kill Mark Drewes. There is no genuine issue of material fact. The debt held by the Plaintiffs arose from a willful and malicious injury within the meaning of section 523(a)(6). The Plaintiffs are entitled to judgment as a matter of law.

Accordingly, it is

ORDERED that the Motion [DE 11] is GRANTED. The court will issue a separate final judgment in accordance with Fed. R. Bankr. P. 7058.

# # #

Copies furnished to:

Bernice C. Lee, Esq.
Philip J Landau, Esq.
Stephen D Jerome, Esq.
AUST